# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, as Subrogee of Todd's Snax, Inc., d/b/a Schultz Foods Company, | Case No. 08-CV-2734 (PJS/JJG) |
| Plaintiff, | ORDER |
| v. | |
| WACHOVIA BANK, NATIONAL ASSOCIATION, | |
| Defendant. | |

Sean J. Mickelson, TERHAAR, ARCHIBALD, PFEFFERLE & GRIEBEL, LLP, for plaintiff.

William F. Mohrman and Gregory M. Erickson, MOHRMAN & KAARDAL, PA, for defendant.

Plaintiff Cincinnati Insurance Company ("Cincinnati"), as subrogee of Todd's Snax, Inc., d/b/a Schultz Foods Company ("Schultz Foods"), commenced this action to recover from defendant Wachovia Bank, National Association ("Wachovia") for a fraudulent check that Wachovia charged against Schultz Foods's commercial bank account. The facts surrounding the check fraud and the ensuing dispute between Wachovia and Schultz Foods are summarized in the Court's order dated July 14, 2010. *See Cincinnati Ins. Co. v. Wachovia Bank, Nat'l Ass'n*, No. 08-CV-2734 (PJS/JJG), 2010 WL 2777478 (D. Minn. July 14, 2010) [Docket No. 50]. In that order, the Court granted summary judgment in favor of Wachovia and dismissed Cincinnati's complaint. *Id*.

Wachovia now seeks to recover the attorney's fees and costs that it incurred in successfully defending this matter. Wachovia contends that it is entitled to recover its fees and

costs under § 40 of the deposit agreement that governs Schultz Foods's account. Section 40 provides that Schultz Foods "agree[s] to reimburse [Wachovia] for any loss, costs or expenses including, without limitation, attorneys' reasonable fees and the costs of litigation (to the extent permitted by law) that [Wachovia] incur[s] as a result of any dispute involving your account . . . . This obligation includes any dispute between you and us involving the account . . . ." Deposit Agreement § 40 [Docket No. 36-4]. Cincinnati opposes Wachovia's motion for attorney's fees on the sole ground that § 40 of the deposit agreement is unconscionable under Pennsylvania law. Cincinnati thereby implicitly concedes the reasonableness of the fees and costs sought by Wachovia. (The Court has reviewed those fees and costs and independently finds that they are reasonable.)

As the party opposing enforcement of the contractual term, Cincinnati bears the burden of showing that the term is unconscionable. *Grimm v. First Nat'l Bank of Pa.*, 578 F. Supp. 2d 785, 794 (W.D. Pa. 2008). A contract is unconscionable under Pennsylvania law if (1) it unreasonably favors the drafter, and (2) the non-drafting party had no meaningful choice in accepting the terms. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

As to the first element, Cincinnati is certainly correct that § 40 is one-sided. Under § 40, Wachovia may *always* recover its attorney's fees from Schultz Foods (even if Wachovia loses), but Schultz Foods may *never* recover its attorney's fees from Wachovia (even if Schultz Foods wins). Pennsylvania courts have not addressed whether Wachovia's unilateral fee-shifting provision — or any similar fee-shifting provision in a commercial contract — favors one party so much that the contract might be unconscionable. But this Court need not decide the issue,

because even if § 40 does unreasonably favor Wachovia, Cincinnati has not met its burden with respect to the second element of Pennsylvania's unconscionability test.

Relying on *McNulty v. H&R Block, Inc.*, Cincinnati argues that Schultz Foods necessarily lacked a meaningful choice in accepting the deposit agreement because the deposit agreement was an adhesion contract. 843 A.2d 1267, 1273, n.6 (Pa. Super. Ct. 2004) ("[T]he determination that an adhesion contract is at issue[] by definition fulfills the second prong of the unconscionability test."). But *McNulty* is a case involving an individual consumer, as are the vast majority of cases in which Pennsylvania courts have found a contract to be one of adhesion. "[I]t would be improper to borrow, without differentiation, concepts developed to protect consumers and employ them in favor of one commercial party over another." *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1066 (Pa. Super. Ct. 1992) (internal quotation omitted).

Pennsylvania courts have been reluctant to find that a contract between two sophisticated commercial entities was a contract of adhesion. The difference between the bargaining power of one commercial entity and the bargaining power of another commercial entity is rarely going to be as large as the difference between the bargaining power of a commercial entity and the bargaining power of a consumer. *See, e.g., Griffith Energy Servs., Inc. v. Heavy Haulers, Inc.*, No. 08-17482, 2009 WL 6371633 (Pa. C.P. (Montgomery Cnty.) Aug. 30, 2009); *San Lucas Constr. Co., Inc. v. St. Paul Mercury Ins. Co.*, No. 2190FEB.TERM.2000, 2001 WL 1807786 (Pa. C.P. March 14, 2001); *Denlinger*, 608 A.2d 1061; *Vasilis v. Bell of Pa.*, 598 A.2d 52 (Pa. Super. Ct. 1991); *Fed. Express v. Paris Bus. Forms, Inc.*, 46 Pa. D. & C.3d 262 (Pa. C.P. (Bucks Cnty.) 1988).

Schultz Foods is a large corporation that generates tens of millions of dollars in annual sales, *see* Mohrman Decl. at Ex. 2 [Docket No. 37], and that, at the time it opened its account and consented to the deposit agreement, had a longstanding business relationship with Wachovia. Schultz Foods is not remotely like a "sheep keeping company with wolves." *K&C, Inc. v. Westinghouse Elec. Corp.*, 263 A.2d 390, 393 (Pa. 1970). Under Pennsylvania law, the Court cannot find that the deposit agreement was a contract of adhesion.

Nor can the Court find that Schultz Foods lacked any meaningful choice in accepting the terms of the deposit agreement. The United States District Court for the Western District of Pennsylvania, applying Pennsylvania law, held in *Grimm v. First National Bank of Pennsylvania* that individual consumers had a meaningful choice whether to accept their consumer deposit agreements because they "were not forced to open checking accounts with [the bank], but rather could have chosen to open said accounts with a different financial institution." 578 F. Supp. 2d at 796. What *Grimm* said about individual consumers is surely true of sophisticated commercial entities such as Schultz Foods. If Schultz Foods did not want to accept the terms offered by Wachovia, Schultz Foods could have opened an account with any of hundreds of other banks. But Schultz Foods chose to open its account at Wachovia. In doing so, Schultz Foods agreed to be bound by the deposit agreement — including the one-way fee-shifting provision contained in § 40. That provision will be enforced.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of defendant Wachovia Bank, National Association for attorney's fees and non-taxable costs [Docket No. 60] is GRANTED.

2. Plaintiff Cincinnati Insurance Company is liable to defendant Wachovia Bank, National Association for $97,026.25 in attorney's fees and $4,197.07 in non-taxable costs, for a total amount of $101,223.32.

Dated: November 8 , 2010

    s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge